[No. 3073.]

LOGAN HOWELL v. THE STATE.

16    93
36   495.
36   638

1. PRACTICE — CIRCUMSTANTIAL EVIDENCE — CHARGE OF THE COURT.— Where the State has to rely exclusively upon circumstantial evidence to secure a conviction, it is incumbent on the trial court to give in charge to the jury the law controlling such evidence.

2. ACCOMPLICE TESTIMONY—CHARGE OF THE COURT.—When the testimony of a State's witness tends to implicate him as a *particeps criminis*, or an accomplice in the offense, it is the duty of the court to give in charge the law regulating such evidence, and to refuse a correct charge asked upon the question is fatal error. See the opinion for evidence held to implicate a witness as an accomplice.

3. THEFT—POSSESSION OF RECENTLY STOLEN PROPERTY—BURDEN OF PROOF.—Where the State, in a theft case, relies upon the defendant's possession of recently stolen property as an inculpatory fact, the defendant is entitled to prove his explanation of his possession made at the time his possession was first challenged, and if such explanation be reasonable the *onus* of disproving it is imposed upon the State. In this case the defendant attempted to prove a conversation with a witness for the purpose of getting his explanation before the jury, but was not permitted to do so. But *held*, that, inasmuch as the bill of exceptions reserved to this ruling fails to disclose the conversation or its materiality, this court cannot revise the action of the court below in this matter.

APPEAL from the District Court of Bexar.   Tried below before the Hon. G. H. Noonan.

The indictment charged the appellant with the theft of twenty-four and a half dollars, the property of S. J. Harland, in Bexar county, Texas, on the twelfth day of August, 1883.   Upon trial the appellant was convicted, and was awarded a term of two years in the penitentiary as punishment.

S. J. Harland was the first witness for the State.   He testified that on the twelfth day of August, 1883, he was engaged in the business of keeping a bar saloon, on Laredo street, west of the San Pedro creek, in the city of San Antonio.   About two o'clock on the morning of that day the witness closed his saloon, counted his money, placed the same in his pocket book and went to bed.   He slept just outside of his back door, in the yard, under a small gallery.   He adjusted his cot under this gallery, and just before going to bed he placed his pocket book, containing the money, under the head of the cot.   Witness counted the money before he put it in the pocket book.   It amounted to twenty-one dollars, besides some loose change.

After the witness had been some little time in bed some customers came to the saloon, and the witness got up and waited on them.   In payment for the beer they ordered and received they gave the witness a five dollar gold piece.   Witness returned the change in silver, taking the change from the pocket book and depositing the five dollar gold piece in the pocket book.   After these customers left the witness returned to his cot, and again placed his pocket book under his head and went to sleep.   At this time the pocket book contained something over twenty dollars, consisting of one five dollar gold piece, six or seven one dollar silver pieces, eighteen or twenty half-dollar silver pieces, and a number of fractional silver pieces of the denominations of dimes and half-dimes.   Witness did not know the exact aggregate amount, but it was fully twenty-one dollars, was the property of the witness, and was taken without the knowledge or consent of the witness.

Witness got up next morning, folded his cot, set it away, went into and opened his saloon.   He then missed his pocket book and money, and went back to the place where he had slept to hunt for it, but could not find it.   At the time that the witness got up he saw the defendant in the back yard near the place where the witness slept.   When the witness went out to

look for his money the defendant was gone. Witness recovered eight dollars of the money that evening. Witness had been making inquiries for the money, and that evening Albert Bigger came to him, gave him eight dollars, and told witness how, when and where he got it. Acting upon information thus obtained, the witness had the defendant arrested. This all occurred in Bexar county, Texas, on the morning of August 12, 1883.

Cross-examined, the witness stated that he could not say exactly what amount of money he lost. It was about twenty-one dollars, no less and probably a little more. Several tenant houses are located in the yard back of witness's saloon, and the yard is a common yard. A card playing or gambling house is also situated on that back yard. This yard or place is known as the "corral." Parties passing from that yard to Laredo street pass through witness's saloon when it is open. The west door of the saloon opens on that yard. A person can pass westward through the yard and reach East street, or the street west of and parallel with Laredo street. A great many people are in and about that yard, passing in and out at nearly all hours of the day and night. Witness did not see who got his money. His first information concerning it came from Bigger, when the latter returned the eight dollars. The witness did not know of his own knowledge that the defendant ever had or saw that money.

Albert Bigger was the next witness introduced by the State. He testified that he was acquainted with S. J. Harland and knew where Harland kept his beer saloon on August 12, 1883. Early one morning in August, 1883—he did not recollect the day of the month—witness was in the yard behind Harland's saloon, and saw the defendant there. The defendant was walking away from the place where Harland was sleeping when the witness first saw him. Witness's attention to him was first attracted by the rolling of money, which seemed to have fallen. Witness looked up and saw that the defendant was in the act of stooping. He did stoop and appeared to pick something up from the ground. Witness asked him what he had found. Defendant shook his head at witness and walked off. Witness then said to him: "You must whack up." He replied: "All right; come on." Witness went with him. After they had gone some distance on the street defendant said that he had got some money, and gave witness eight dollars—seven one dollar

and two half-dollar pieces. Witness took the money home and handed it to Caroline Fielder, with whom he was boarding, and told her to put it away, as an owner for it might be found. In the evening witness learned that Harland had lost the money, and he went and got the money and gave it to Harland.

Cross-examined, the witness stated that he did not know how much money the defendant picked up. He gave the witness eight dollars only, saying that it was half. This was early in the morning, about sunrise. A number of tenant houses stand on the yard in the rear of Harland's saloon. That yard was used as common ground. A gambling house also stood in the yard. A great many persons are to be found in that yard, walking about and going in and out at all hours of the day and night. The witness thought that the defendant had found some money that some one had lost, was the reason he told defendant to " whack up." The eight dollars given him by the defendant the witness delivered to Harland before any arrest was made or any prosecution was instituted. Harland made affidavit against defendant after the witness gave him the eight dollars. On the day after witness gave Harland the eight dollars the defendant was arrested. At this point the State closed.

Anderson Harris was the first witness introduced by the defendant. He testified that he was a police officer on the twelfth day of August, 1883, when Mr. Harland lost his money. The warrant for the arrest of the defendant was placed in the hands of the witness for execution. Witness arrested the defendant.

L. H. Byrn was the next witness for the defense. He testified that he knew the defendant, had known him for five or six years, and at one time had him hired. He knew that the defendant's reputation for honesty in the community in which he lived was perfectly good.

Cross-examined, the witness stated that he had never heard any one discuss or say anything about the defendant's character for honesty. The witness testified only as to what he knew. The witness knew nothing about this charge.

Mrs. B. Porter testified, for the defense, that she knew the defendant, and once had him in her service. She knew nothing about his reputation for honesty, but his conduct in that regard while in her employ was beyond reproach.

The charge of the court, the refusal of charges asked, and the insufficiency of the evidence to support the conviction, were the errors assigned in the motion for new trial.

No brief for the appellant has reached the Reporters.

*J. H. Burts,* Assistant Attorney General, for the State.

Willson, Judge. 1.　There is no direct evidence in the record that the defendant committed the theft. No witness saw him take the money charged to have been stolen, and he did not confess that he had taken it. Circumstantial evidence alone is relied upon to establish defendant's guilt. This being the case, the court should have instructed the jury in the rules applicable to that kind of evidence. No such charge was given, and therefore the court failed to give the jury the law applicable to the case. (*Lee* v. *The State,* 14 Texas Ct. App., 266; *Dovalina* v. *The State,* 14 Texas Ct. App., 312.)

2.　It was contended by the defendant that Bigger, the principal witness for the State, was an accomplice in the theft. We think the testimony of this witness tends to show that he was an accomplice. He states that he was present when the defendant picked up money near the place where the alleged stolen money had been left; that he told the defendant he must "whack up," that is, divide the money with him; and that defendant gave him a part of the money, which he, witness, afterward returned to the alleged owner. We think, upon this witness's own testimony, the issue was fairly presented whether or not he was an accomplice in the theft. No other witness saw the defendant with any money. Bigger unquestionably knew that the money did not belong to the defendant, and yet he demanded a division of it, and received a portion of it. If his own statements be true, he was himself a *particeps criminis* to the extent, at least, of receiving stolen property, knowing it to be stolen. We think the evidence demanded that the issue thus raised should be submitted to the consideration of the jury, under proper instructions from the court. This was not done in the charge of the court, and special charges requested upon the subject by defendant's counsel were refused. In refusing the charge upon accomplice testimony, with reference to the witness Bigger, we think the court erred. (*Sitterlee* v. *The State,* 13 Texas Ct. App., 587; Clark's Crim. Law, p. 552, note 224.)

3.　Defendant proposed to prove by a witness that, just before he was arrested upon the charge of the theft of the money, he had a conversation with the witness in regard to finding some money at the place where the alleged stolen money was

lost. We are not informed by the bill of exception taken to the ruling of the court rejecting this proposed evidence, what the conversation was, and we are therefore unable to determine the materiality of it. If, in that conversation, the defendant, for the first time, gave an explanation of his possession of the alleged stolen money, and such explanation was reasonable, and not shown to be false, it would have been material to his defense, and would have been admissible in his favor. (*Sitterlee* v. *The State,,* 13 Texas Ct. App., 587.) Where, in a prosecution for theft, the State relies upon the defendant's possession of recently stolen property as an inculpatory fact, any explanation given by the defendant, when his right to the property is for the first time called in question, respecting his possession of it, is admissible in evidence in his favor; and if such explanation be reasonable and exculpatory, the State is charged with the onus of proving the falsity of it, before such possession can, of itself, be held criminative of the accused. (*Anderson* v. *The State,* 11 Texas Ct. App., 576.) But, as before stated, the bill of exceptions does not state facts sufficient to enable us to determine whether or not any error was committed by the court in rejecting the proposed testimony. (*Davis* v. *The State,* 14 Texas Ct. App., 645.) Our object in noticing this question is to call attention to the rules governing the admissibility of such testimony, in case the same should be sought to be introduced on another trial of this case.

Because the court failed to instruct the jury as to the law applicable to the case, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered May 3, 1884.